UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MAX ROCKMAN & RANDALL MORING,

*Plaintiffs*,

v.

MICROSOFT CORPORATION.,

*Defendant.*

Case No. 2:26-cv-1876

CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiffs Max Rockman and Randall Moring (collectively, "**Plaintiffs**"), on behalf of themselves and similarly situated individuals, bring this antitrust action against Defendant Microsoft Corporation ("Microsoft" or "Defendant") pursuant to 15 U.S.C. §1, 15 U.S.C. §2 (Sections 1 and 2 of the Sherman Antitrust Act), 15 U.S.C. §4, 15 U.S.C. §26 (Sections 4 and 16 of the Clayton Act), the Washington Consumer Protection Act, alleging the following in support thereof:

OVERVIEW OF THE ACTION

1.  PC games are big business nowadays.  Approximately 45% of gamers play their video games on a personal computer ("PC").[1]

---

[1] *Essential Facts About the U.S. Video Game Industry*, Entertainment Software Association, 2025. Available at https://www.theesa.com/resources/essential-facts-about-the-us-video-game-industry/2025-data/.

Plaintiff's Class Action Complaint
– Page 1

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

2. As this Court has already observed in a similar case, "downloaded PC games are materially distinct from other forms." *In re Valve Antitrust Litigation*, 2:21-cv-563-JNW, Doc. 391, p.17.

3. This case is about the market for distribution of PC games.

4. That market is dominated by Steam, a PC game store owned and operated by Valve Corporation ("Valve" or "Steam").

5. Most estimates put Steam's market share in PC game distribution at about 75%.[2]

6. Microsoft is a direct competitor to Valve; its own PC game store, the Microsoft Store, distributes PC games like Steam.

7. Valve's anticompetitive actions to maintain its monopoly and industry-high 30% distribution fee have been discussed at length in *In re Valve Antitrust Litigation*. (W.D. Wash. Case No. 2:23-cv-00563).

8. But Valve has not acted alone. Without the cooperation of some of the biggest PC game companies in the world, Steam could not have achieved and maintained the dominance it has enjoyed for at least a decade now.

9. Microsoft is one of those companies. Through its agreements with Valve, Microsoft has actively impeded price competition in the PC game market.

10. Microsoft and Valve have conspired with the specific goal of not competing on price.

11. Microsoft has agreed with Valve not to compete on pricing of PC games.

---

[2] *See, e.g.* "Valve conquered PC gaming. What comes next?" Louis Ashworth, *Financial Times* (July 3, 2025) (available at https://www.ft.com/content/f4a13716-838a-43da-853b-7c31ac17192c).

Plaintiff's Class Action Complaint
– Page 2

**MORROW NI LLP**
506 2ND AVE, FL 14
SEATTLE, WA 98104

**Bucher Law PLLC**
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

12. Microsoft's agreement not to compete with Steam constitutes horizontal price-fixing.

13. "No antitrust offense is more pernicious than price fixing." *FTC v. Ticor Title Ins.*, 504 U.S. 621, 639 (1992).

14. Microsoft and Valve have also agreed not to compete on PC gaming content.

15. The agreement not to compete on PC gaming content limits the ability of game developers to drive their fans to more cost-efficient distribution channels.

16. Microsoft has agreed to take—and regularly receives—kickbacks from Valve as remuneration for agreeing not to compete with Steam.

17. Microsoft has also agreed with Valve not to compete on the release date of new PC games and PC game content.

18. The effect of Microsoft's anticompetitive agreements with Valve prevents competition in the market for PC games.

19. The cost of Defendant's stifling of competition falls hardest on ordinary gamers like the Plaintiffs, who have paid higher prices than they would have in a competitive market, and have suffered from reduced game quality and choice as well.

20. Under the Sherman Act and the Washington Consumer Protection Act, Microsoft is liable for this harm.

21. Plaintiffs bring this action on behalf of themselves and a putative class of similarly situated individuals, in order to vindicate the public interest in free and fair competition, and to recover damages for the harm they have all suffered as a result of Defendant's anticompetitive conduct.

Plaintiff's Class Action Complaint
– Page 3

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

PARTIES

22. Plaintiff Max Rockman is an individual and a resident citizen of Cincinatti, Ohio. Mr. Rockman is an avid PC gamer who has purchased PC games published, developed, and/or sold by Defendant, and has suffered harm as a result of Defendant's anticompetitive conduct and agreements.

23. Plaintiff Randall Moring is a resident citizen of Lebanon, Oregon. Mr. Moring is an avid PC gamer who has purchased PC games published, developed, and/or sold by Defendant, and has suffered harm as a result of Defendant's anticompetitive conduct and agreements.

24. Defendant Microsoft Corporation is a Washington corporation with a principal place of business in Redmond, Washington.

25. Microsoft is a PC game developer, publisher, and PC game distributor.

26. Defendant operates the Microsoft Store, which distributes PC games.

27. In a competitive market without the taint of Microsoft and Valve's price fixing, Microsoft would have been a Valve competitor.

**JURISDICTION AND VENUE**

28. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the Sherman Act, 15 U.S.C. §§ 1 and 2.

29. The Court also has jurisdiction pursuant to 15 U.S.C. § 15, which provides for private actions for damages by persons injured by violations of the antitrust laws.

30. This Court has personal jurisdiction over Microsoft Corporation because Microsoft is headquartered in Redmond, Washington. Microsoft has engaged in sufficient minimum contacts with each of the United States and has purposely

Plaintiff's Class Action Complaint
– Page 4

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

availed itself of the benefits and protections of both United States and Washington law such that the exercise of jurisdiction over Microsoft comports with due process.

31. This Court is the proper venue for this case pursuant to 15 U.S.C. § 22, as Microsoft Corporation is an inhabitant of this judicial district.

32. Venue is also proper under 28 U.S.C. § 1391(b)(1) because the defendant resides in this district.

## FACTUAL ALLEGATIONS

### I. Relevant Market

33. The relevant product market is the market for distribution of PC games.

34. The relevant geographic market is the United States of America.

35. PC game distribution is a unique and definable market, distinct from the distribution markets for other forms of video games and electronic entertainment.

36. PC games themselves are only playable on personal computers and are not compatible with game consoles like the Nintendo Switch, Sony PlayStation, or Microsoft's Xbox.

37. PC games are not compatible with mobile devices, whose hardware capabilities are insufficient to even run most PC games.

38. Video games for consoles or mobile devices are not economic substitutes for PC games.

39. PC games, console games, and mobile phone games each offer notably different user experiences, game functionality, and customization options.

Plaintiff's Class Action Complaint
– Page 5

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

40. PCs offer far more powerful hardware and software capabilities than consoles or mobile devices, and therefore enable gamers to enjoy materially different graphics, gameplay, responsiveness, physics, and competitive advantages.

41. PC games are almost always played with a mouse and keyboard, rather than a proprietary controller (as is the case for consoles) or a touch screen (as is the case for mobile devices).

42. Many of the most popular games of the past decade have been online games, where gamers play against other players, rather than simply against the computer.

43. Personal computers offer much faster and responsive online play. The growing world of competitive gaming (sometimes known as "Esports") takes place primarily on PC—because PCs simply offer a technological advantage in a competitive mode.

44. This Court has already noted that PC games are distinct from video games available on consoles, "based on the purchase and game play experience (such as the hardware inputs and outputs, the computing capacity of the PC itself, the opportunities for game customization, the lack of latency that downloaded games offer, and the game play experience)." *In re Valve Antitrust Litigation*, 2:21-cv-563-JNW, Doc. 391, p.17.

45. The Ninth Circuit has held that "the console market does not include PCs," and "[t]hat customers may 'cross-shop' between consoles and PCs does not demonstrate 'reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'" *FTC v. Microsoft*, 681 F. Supp. 3d 1069, 1087 (N.D. Cal. 2023), *aff'd*, F.4th 954 (9th Cir. 2025) (quoting *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028 (D.C. Cir. 2008).

Plaintiff's Class Action Complaint – Page 6

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

46. A separate federal district court has found "that mobile gaming, including mobile devices and tablets, is a separate market from gaming in general." *Epic Games, Inc., v. Apple Inc.*, 559 F.Supp.3d 898, 1021 (N.D. Cal. 2021).

47. "A geographic market is an area of effective competition ... where buyers can turn for alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991) (cleaned up).

48. Both the Microsoft Store and Steam sell PC games to consumers across the United States.

49. The Plaintiffs are all resident citizens of the United States, and the Class consists of individuals who purchased PC games within the United States.

50. Microsoft, like Valve and other digital distribution platforms, divides markets by currency, such that customers paying in dollars are subject to different purchase experiences (and different prices) than those paying in euros, for instance.

51. The relevant market for this case is distribution of PC games within the United States.

52. Alternatively, the relevant market in this case is the digital distribution of both PC games and video games for consoles such as Microsoft's Xbox. The Xbox is one of the "Big 3" console gaming systems, and Microsoft's share of that market is substantial. Given Microsoft's coconspirator's dominance in the PC market, even if the market consists of PCs and consoles, the cartel's market share gives it enormous power over the industry.

### III. <u>Anticompetitive Conduct</u>

53. Microsoft Corporation ("Microsoft") operates a digital distribution platform for PC games called the Microsoft Store.

Plaintiff's Class Action Complaint – Page 7

**MORROW NI LLP**
506 2ND AVE, FL 14
SEATTLE, WA 98104

**Bucher Law PLLC**
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

54. On information and belief, Defendant's Microsoft store is one of the top 5 digital PC game store in the United States.

55. Valve Corporation operates Steam, the largest PC game distribution platform in the U.S.

56. Together, Valve and Microsoft dominate the relevant market, controlling at least 80% of PC game distribution in the United States.

57. Steam is the biggest would-be competitor to the Microsoft Store in the market for PC games.

58. Valve and Microsoft are would-be competitors in PC game development as well as distribution.

59. Microsoft develops and publishes PC games, which are distributed through Steam, the Microsoft Store, and other distributors.

60. Microsoft is now one of the largest PC game developers in the world, as it owns some of the best-selling franchises in gaming history: Activision Blizzard (*Overwatch, Call of Duty, Diablo*), Bethesda Softworks (*Fallout, DOOM, Skyrim*), *Halo*, and *Age of Empires*.

61. Horizontal price-fixing agreements are illegal *per se* under the Sherman Act.

62. In 2011, Valve and Microsoft entered into a contract concerning PC games sold on both Microsoft's and Valve's competing stores. *Valve v. Abbruzzese, et al.*, W.D. Wash. Case No. 2:24-cv-1717, Doc. 170.

63. As Valve itself explained, an arbitrator presiding over a series of arbitrations against Valve examined this agreement, and "found that one clause of [the] 2011 Steam Distribution Agreement between Valve and Microsoft … was an unlawful 'horizontal price-fixing agreement[.]'" *Id.* at 15:23-26.

Plaintiff's Class Action Complaint
– Page 8

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

64. As it further explained, this agreement between Microsoft and Valve was found by the arbitrator to be a "per se" price fixing agreement under the Sherman Act. *Id.* at 16.

65. The arbitrator also described this agreement's "Section 6.4(b) as a 'price parity' requirement[.]" *Id.* at 18:1-2.

66. Microsoft internally referred to the arrangement as "price parity." Fox Chapel Research. "'Does Steam Abuse Market Power?' and the Future of This Blog." Substack, Nov. 9, 2025. (Available at: foxchapelresearch.substack.com/p/does-steam-abuse-market-power-and).

67. In another internal exchange, a Microsoft employee stated: "[T]he Steam publishing agreement historically has required product and price parity. When I looked at it pre Age:DE a few years ago, I found that we could sell at any price we wanted before Steam release, but once we released on Steam we needed to give Steam price parity to our other digital channels. In the case of a GoW5 Steam/Windows Store (Garrison) simship, I'd assume Steam demands you don't undercut them once you release on Steam." *Id.*

68. In other words, under this agreement, if Microsoft lowers the price of one of its own games for distribution on its own platform, it must also lower the price it offers that product for sale on Steam's platform.

69. Both Microsoft and Valve understood their agreements to require price parity.

70. Both Microsoft and Valve honored their agreements not to compete on price.

71. Both Microsoft and Valve honored their agreements not to compete on PC game content.

72. Since 2011, Microsoft and Valve have adhered to the agreement to match prices of PC games sold on their competing stores, and continue to do so to this day.

Plaintiff's Class Action Complaint
– Page 9

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

73. Microsoft's agreements with Valve harmed competition in the market for distribution of PC games.

74. The purpose and effect of Microsoft's agreements with Valve were to prevent competition for PC games.

75. Microsoft's agreements with Valve also prevented competition on game quality and content by establishing uniformity across the market.

76. Microsoft's agreements with Valve were a horizontal price-fixing conspiracy.

77. Collusion between competitors is "the supreme evil of antitrust." *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 US 398, 408 (2004).

78. Microsoft's price-fixing conspiracy with Valve is illegal *per se* under the Sherman Act.

79. Though Microsoft had the money and industry clout to actually compete with Steam, it instead chose to join Valve's cartel.

80. Microsoft's decision to cooperate with Valve rather than compete had the effect of bolstering Valve's monopoly in the market for PC game distribution.

81. In effect, Microsoft and Valve are partners in a cartel over the market for PC game distribution.

82. By choosing to collude rather than compete, Microsoft deprived consumers of the benefits of competition: lower prices, increased output, unique content selection, and higher quality.

83. Consumers like the Plaintiffs were overcharged on their PC game purchases as a result of these anticompetitive practices.

Plaintiff's Class Action Complaint
– Page 10

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

84. Plaintiffs purchased PC games directly from Steam and/or the Microsoft Store and paid artificially inflated prices as a result of the anticompetitive agreements between Microsoft and Valve.

85. Upon information and belief, Valve and Microsoft agreed not to divulge the terms of their anti-competitive agreements.

86. To this day, Valve and Microsoft conceal their agreements from the public.

87. The purpose and effect of these secrecy agreements was to conceal the anticompetitive arrangements between Valve and Microsoft.

88. For years, Microsoft and Valve have acted affirmatively to conceal the nature of their price-fixing arrangement.

89. As a result of Microsoft's efforts at concealment, its agreements not to compete with the chief competitor of its Microsoft Store remained concealed from consumers (including the Plaintiffs) for years.

90. The Plaintiffs and class members could not have discovered the Defendant's price fixing agreement and conspiracy until recently.

91. The findings that Valve and Microsoft agreed to fix prices did not become public until Valve's briefing discussed it on May 28, 2026.

<u>CLASS ACTION ALLEGATIONS</u>

92. **The Class**. Plaintiffs bring this action on behalf of themselves and all individuals similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) as representatives of a Class defined as follows:

All persons who, directly or indirectly, purchased PC games (or other downloadable content) through the Microsoft Store or Steam on or after March 25, 2011, and continuing through the present until the effects of Defendant's price-fixing conspiracy or agreements are

Plaintiff's Class Action Complaint – Page 11

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

**Bucher Law PLLC**
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

eliminated, and where the individual made the purchase either (1) from a location within the United States or (2) using U.S. dollars.

Excluded from the Class are:

> (a) individuals who have been awarded full relief for the harm caused by Microsoft-Valve conspiracy in another forum;
>
> (b) the owners and employees of the law firms representing the class;
>
> (c) Microsoft Corporation and its subsidiaries, affiliates, officers, directors, employees, agents, and their immediate family members;
>
> (d) Valve Corporation and its subsidiaries, affiliates, officers, directors, employees, agents, and their immediate family members;
>
> (e) the Court and its personnel.

93. The Class Members are so numerous that joinder is impracticable.

94. Millions of Americans purchase PC games from Defendant and its co-conspirator every year, and continue to do so.

95. The identity of all Class Members is known to Microsoft and/or its co-conspirator, and can be identified from the internal business records of both.

96. There are numerous questions of law and fact that are common the Class that predominate over any issues affecting any individual Class Member, and those questions relate to the anticompetitive conduct alleged herein, and the common type and pattern of injury suffered as a result, including, inter alia:

> a. Whether Microsoft entered into agreements with Valve to fix prices for PC games;
>
> b. Whether Microsoft entered into agreements with Valve to limit quality and content of PC games;

Plaintiff's Class Action Complaint – Page 12

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

c.  Whether Microsoft agreed to accept kickbacks from Valve in return for refraining from *bona fide* competition;

d.  Whether Microsoft's agreements with Valve unreasonably restrained trade;

e.  Whether Microsoft conspired with Valve to monopolize the PC game distribution market;

f.  Whether Microsoft's conduct violated Section 1 of the Sherman Act;

g.  Whether Microsoft's conduct caused PC game prices to be higher than they would have been in a competitive market;

h.  The appropriate measure of damages and/or injunctive relief.

97. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly situated and similarly affected by Microsoft's wrongful conduct.

98. Plaintiffs will fairly and adequately protect the interests of the members of the Class and each has retained counsel competent and experienced in class action litigation, including antitrust litigation.

99. Plaintiffs' counsels at Bucher Law PLLC (pro hac vice application forthcoming) and Morrow Ni LLP together have extensive experience adjudicating consumer antitrust claims on behalf of PC gamers and is intimately familiar with the relevant market and the facts underlying this case.

100. These firms have already successfully arbitrated consumer antitrust claims against Defendant's co-conspirator Valve in similar cases, and have obtained arbitration awards finding that Valve and Microsoft engaged in a *per se* illegal price fixing conspiracy.

101. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Plaintiff's Class Action Complaint – Page 13

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

**Bucher Law PLLC**
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it difficult for members of the Class to individually redress the wrongs done to them.

## CLAIMS FOR RELIEF

### Count One: Sherman Act §1

102. Plaintiffs re-allege and incorporate by reference the allegations above as though fully set forth herein.

103. Microsoft entered into a contract, combination, or conspiracy with Valve Corporation, the purpose and effect of which was to restrain trade among the States or foreign commerce.

104. Specifically, Microsoft entered into agreements with Valve to match prices of PC games across their competing sales channels.

105. The agreements between Microsoft and Valve unreasonably restrained trade and caused harm to competition in the market for distribution of PC games.

106. Sherman Act §1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade.

107. "Price is the central nervous system of the economy, and an agreement that interferes with the setting of price by free market forces is illegal on its face." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692 (1978) (cleaned up).

108. The agreements between Microsoft and Valve constituted horizontal price-fixing, which is illegal *per se* under the Sherman Act.

109. Alternatively, the agreements between Microsoft and Valve are just as illegal under the "Rule of Reason," as the agreements caused anticompetitive harm.

Plaintiff's Class Action Complaint
– Page 14

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

110. The agreements between Valve and Microsoft to not compete in the market for PC game distribution were not justified by any legitimate pro-competitive justification.

111. The agreements between Microsoft and Valve prevented and/or deterred Microsoft from offering lower prices for PC games on its own Microsoft store.

112. The agreements between Microsoft and Valve prevented and/or deterred Microsoft from allowing PC games published by Microsoft and its subsidiaries from being sold at prices lower than those offered on Steam.

113. By eliminating price competition between the Defendant's Microsoft Store and Valve's Steam platform, the agreements between Defendant and Valve had the effect of raising game prices across the market, including on Steam, which sells more PC games (by both quantity and revenue) than any other distribution platform in the United States.

114. The combined market power of Microsoft and Valve in the market for PC game distribution is such that the anticompetitive agreements between the two companies impact the entire market, inflating prices across all PC game distribution channels.

115. The agreements involved the nationwide sale of PC games through digital distribution platforms, and therefore affected interstate and foreign commerce.

116. The agreements were actively concealed through a parallel network of secrecy agreements.

117. As a direct and proximate result of Microsoft's unlawful conduct, Plaintiffs and the Class members have been injured in their business or property by paying artificially inflated prices for PC games.

118. Plaintiffs and the Class members have paid more for PC games than they would have in a competitive market.

Plaintiff's Class Action Complaint
– Page 15

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

119. Plaintiffs and the Class members have suffered antitrust injury, and therefore have standing to assert these claims under the Sherman Act.

120. Defendant's agreements with Valve Corporation violated §1 of the Sherman Act.

121. For its violation of the Sherman Act, Defendant is liable to the Plaintiffs and Class Members for actual damages, treble damages, costs, and attorneys' fees. 15 U.S.C. §15.

Count Two: Washington Consumer Protection Act

122. Plaintiffs re-allege and incorporate by reference the allegations above as if fully set forth herein.

123. Microsoft engaged in unlawful, unfair, or fraudulent business practices.

124. More specifically, Microsoft engaged in unlawful business practices by entering into price fixing agreements with Valve in violation of federal and state antitrust laws.

125. Microsoft's restraints on competition which violate the Sherman Act also violate the Washington Consumer Protection Act. *RCW 19.86 et seq*.

126. "Under RCW 19.86.030, '[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful.' The legislature patterned this provision after the federal Sherman Act, 15 U.S.C. § 1. When the Washington Legislature passed the Consumer Protection Act, ch. 19.86 RCW, it intended for our courts to be guided by the interpretation that the federal courts give to the corresponding federal statutes. RCW 19.86.920." *State v. LG Electronics, Inc.*, 375 P.3d 1035, 1044, fn.3 (Wash. 2016) (GORDON McCloud J., concurring in part).

127. "The CPA's citizen suit provision states that '[a]ny person who is injured in his or her business or property' by a violation of the act may bring a civil suit for

Plaintiff's Class Action Complaint
– Page 16

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

injunctive relief, damages, attorney fees and costs, and treble damages. RCW 19.86.090. To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash. 2009).

128. Additionally, Microsoft agreed with Valve to eliminate in-game references to better prices and/or unique content on non-Steam stores. This conduct has already been found unlawful by the U.S. District Court for the Northern District of California in the case of *Epic v. Apple. 4:20-cv-5640-YGR*.

129. Microsoft's conduct caused economic injury to Plaintiffs and the Class members.

130. As a direct and proximate result of Microsoft's unlawful conduct, Plaintiffs and the Class members have been injured in their business and/or property by paying artificially inflated prices for PC games.

131. Plaintiff and the Class members paid approximately 20% more for PC games than they would have in a competitive market.

132. On behalf of themselves and the Class members, Plaintiffs demand judgment against Microsoft for actual damages, treble damages, costs, and a reasonable attorneys' fee.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, PREMISES CONSIDERED, Your Plaintiffs pray this Court for judgment against Defendant for the following:

A) For certification of the proposed Class, appointment of Plaintiffs as representatives of the Class, and appointment of Plaintiff's counsel as Class counsel;

Plaintiff's Class Action Complaint – Page 17

**MORROW NI LLP**
506 2ND AVE, FL 14
SEATTLE, WA 98104

**Bucher Law PLLC**
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131

B) For actual damages and treble damages pursuant to 15 U.S.C. § 15, in an amount to be determined at trial;

C) For actual damages and treble damages pursuant to the Washington Consumer Protection Act, in an amount to be determined at trial;

D) For an injunction prohibiting Microsoft from entering into or maintaining any price fixing agreement with Valve or any other entity involved in the market for PC game distribution;

E) For a declaration pursuant to 28 U.S.C. § 2201 that Microsoft's price fixing agreements with Valve violate federal and state antitrust laws;

F) For reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 15;

G) For pre-judgment and post-judgment interest as allowed by law; and

H) For such other relief as the Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED this 31st day of May, 2026.

MORROW NI LLP

*s/ Yue Serena Yang*

Yue Serena Yang, WSBA # 63341
506 2nd Avenue, FL 14
Seattle, WA 98104
serena@moni.law

BUCHER LAW PLLC
Will Bucher (*pro hac vice forthcoming*)
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131
(202) 997-3029
will@bucherlawfirm.com

*Attorneys for Plaintiffs*

Plaintiff's Class Action Complaint
– Page 18

MORROW NI LLP
506 2ND AVE, FL 14
SEATTLE, WA 98104

Bucher Law PLLC
1000 Brickell Ave
STE 715 - Mailbox 1004
Miami, FL 33131